UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

SHARON JONES,

Plaintiff(s),

v.

SOUTHWEST GAS CORPORATION,

Defendant(s).

Case No. 2:18-CV-1142 JCM (DJA)

ORDER

Presently before the court is defendant Southwest Gas Corporation's ("defendant") motion for summary judgment. (ECF No. 24). Pro se plaintiff Sharon Jones ("plaintiff") filed a response (ECF No. 28), to which defendant replied (ECF No. 32).

Also before the court is plaintiff's motion for leave to file a sur reply. (ECF No. 33).

Also before the court is defendant's motion to strike motion for leave to file sur reply. (ECF No. 34). Plaintiff did not respond, and the time to do so has passed.

**I.   Background**

The instant action arises from defendant's termination of plaintiff. Plaintiff was a "new business representative" for defendant. (ECF No. 24 at 3–4). As a new business representative, plaintiff performed a variety of administrative tasks related to new customers. *Id.* at 4. Plaintiff oversaw defendant's new customer operations in southern Nevada. *Id.*

In August 2017, plaintiff was involved in a motor vehicle accident. (ECF No. 1 at 6). In October 2017, plaintiff developed pseudotumor cerebri, a neurological condition, and informed defendant that she would not be able to work for several days. (ECF No. 24 at 4). Defendant contacted plaintiff and informed her that she "may be entitled to a reasonable accommodation

**James C. Mahan
U.S. District Judge**

| | |
|---|---|
| 1 | under the Americans with Disabilities Act ("ADA") for an accommodation or extended leave of |
| 2 | absence." *Id.* Defendant provided plaintiff with a request for accommodation form. *Id.* |

Plaintiff's daughter sent defendant the completed request for accommodation form on October 16, 2017. *Id.* at 5. Plaintiff's healthcare provider, Dr. Kimberly Adams, indicated that plaintiff had a physical or mental impairment and a chronic medical condition that was likely to last up to a year. *Id.* Dr. Adams further noted that plaintiff was unable to perform any of her job functions and would return to work on October 27, 2017. *Id.* Dr. Adams said the October 27 date was subject to change. *Id.* Dr. Adams later extended plaintiff's return-to-work date to December 2, 2017, and then to January 1, 2018. *Id.* at 5–6. On both occasions, Dr. Adams said plaintiff's return-to-work date was subject to change. *Id.*

Defendant received plaintiff's last request for accommodation—which listed the tentative January 1, 2018, return date—on November 27, 2017. *Id.* at 6. Plaintiff's return-to-work date had already been pushed out, the January date was "subject to change," and plaintiff's condition could last up to a year. *Id.* at 7. In light of those facts, defendant determined that it could not reasonably accommodate plaintiff's request for an undetermined and indeterminable amount of leave. *Id.* On November 29, 2017, defendant terminated plaintiff effective December 1. *Id.* at 8.

Defendant informed plaintiff that she would be eligible to apply for vacant positions and, for six months after her termination, plaintiff would be considered an "internal candidate." *Id.* This gave plaintiff access to and the opportunity to apply for positions that were not posted externally. *Id.* On March 16, 2018—more than two months after plaintiff's latest return-to-work date—plaintiff informed defendant that she had been released to return to work and was interested in applying for a position. *Id.*

After obtaining a right to sue letter from the Equal Employment Opportunity Commission ("EEOC"), plaintiff filed the instant action in state court, alleging a violation of the ADA, retaliation in violation of the ADA, negligent infliction of emotional distress, and negligent training and/or supervision. (ECF No. 1). Defendant timely removed the action. *Id.*

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 2 -

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

- 3 -

*Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III.     Discussion

Turning to defendant's motion for summary judgment, the court acknowledges that petitioner filed this action pro se, but "[t]he right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *Faretta v. Cal.*, 422 U.S. 806, 834 (1975); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal quotation marks and citation omitted)); *United States v. Merrill*, 746 F.2d 458, 465 (9th Cir. 1984) ("A pro se defendant is subject to the same rules of procedure and evidence as defendants who are represented by counsel."). Indeed, "*pro se* litigants in an ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).

James C. Mahan
U.S. District Judge

- 4 -

Ordinarily, "[t]he failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion." LR 7-2(d). This court has held this rule applies in cases such as here when a party fails to address a portion of the moving party's motion. *Moore v. Ditech Fin., LLC*, No. 2:16-CV-1602-APG-GWF, 2017 WL 2464437, at *2 (D. Nev. June 7, 2017), *aff'd*, 710 F. App'x 312 (9th Cir. 2018) (holding that the plaintiff "conceded to dismissal" of a claim "by failing to oppose the defendants' arguments *on this point* in their motion to dismiss" (emphasis added)).

However, "summary judgment cannot be granted by default, even if there is a complete failure to respond to the motion." Fed. R. Civ. P. 56, 2010 cmt. to subdivision (e). The court may only grant summary judgment if "the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

This principle is borne out by Ninth Circuit case law holding that a court cannot grant a summary judgment motion merely because it is unopposed. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 949–50 (9th Cir. 1993); *see also Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003) (a district court cannot grant a motion for summary judgment based merely on the fact that the opposing party failed to file an opposition). Consequently, Local Rule 7-2(d) specifically exempts motions for summary judgment from the general rule. LR 7-2(d).

Thus, even without an opposition to defendant's motion as it pertains to plaintiff's negligence, negligent training, negligent infliction of emotional distress, and retaliation claims, the court applies standards consistent with Federal Rule of Civil Procedure 56, determining if the moving party's motion demonstrates that there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry*, 983 F.2d at 950; *Martinez*, 323 F.3d at 1182.

The ADA prevents covered entities from discriminating against a qualified individual on the basis of disability when making decisions to discharge employees. 42 U.S.C. § 12112(a). The ADA goes on to define "discriminate against a qualified on the basis of disability" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . ." *Id*

§ 12112(b)(5)(A). However, it is not discrimination if "such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.*

In evaluating both discrimination and retaliation claims under the ADA, courts apply the *McDonnell Douglas* three-part burden-shifting framework. *Raytheon Co. v. Hernandez,* 540 U.S. 44, 49 (2003) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)). Under this framework, a plaintiff must first establish a prima facie case of disability discrimination or retaliation. *See Samper v. Providence St. Vincent Med Ctr.,* 675 F.3d 1233, 1237 (9th Cir. 2012); *Allen v. Pac. Bell,* 348 F.3d 1113, 1114 (9th Cir. 2003) (per curiam). If a plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate a "legitimate, non-discriminatory reason" for the adverse employment action. *Snead v. Metro. Prop. & Cas. Ins. Co.,* 237 F.3d 1080, 1093 (9th Cir. 2001). If an employer establishes a legitimate reason for the adverse action, the burden shifts back to the plaintiff to prove that the employer's asserted reason is merely a pretext for the discrimination. *See id.*

In applying the *McDonnell Douglas* burden-shifting framework, the court first considers whether plaintiff has shown a prima facie case for disability discrimination. To establish a prima facie case, a plaintiff must demonstrate that: "(1) [s]he is disabled within the meaning of the ADA; (2) [s]he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) [s]he suffered an adverse employment action because of her disability." *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (citing *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003)).

"To establish a prima facie case of retaliation under the ADA, an employee must show that: (1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004) (citing *Brown v. City of Tucson,* 336 F.3d 1181, 1186–87 (9th Cir. 2003)).

"Both before and since the passage of the ADA, a majority of circuits have endorsed the proposition that in those jobs where performance requires attendance at the job, irregular attendance compromises essential job functions." *Samper*, 675 F.3d at 1237.

Indeed, the Seventh Circuit has unambiguously held that "a long-term leave of absence cannot be a reasonable accommodation." *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017), *cert. denied,* 138 S. Ct. 1441, 200 L. Ed. 2d 717 (2018). The Seventh Circuit reasoned that "[t]he ADA is an antidiscrimination statute, not a medical-leave entitlement. . . . An employee who needs long-term medical leave *cannot* work and thus is not a 'qualified individual' under the ADA." *Severson*, 872 F.3d at 479 (citing *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003)).

Similarly, the Eleventh Circuit has held that a plaintiff who requested an indefinite leave of absence "was not requesting an accommodation that allowed him to continue work in the present, but rather, in the future—at some indefinite time." *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003). The plaintiff in *Wood* suffered from cluster headaches, which meant that he "might return to work within a month or two, or he could be stricken with another cluster headache soon after his return and require another indefinite leave of absence." *Id.* Even though Wood had been granted indefinite leave of absence previously, "prior accommodations do not make an accommodation reasonable." *Id.* The Eleventh Circuit concluded that he was not a qualified individual under the ADA and his requested accommodation was not reasonable. *Id.*

When addressing California's Fair Employment and Housing Act, which parallels the protections afforded by the ADA, the Ninth Circuit held as follows:

> Job-protected leave for a fixed period can be an accommodation, **but indefinite leave is not reasonable as a matter of law**. The mere fact that a medical leave has been repeatedly extended does not necessarily establish that it would continue indefinitely. In some circumstances, an employer may need to consult directly with the employee's physician to determine the employee's medical restrictions and prognosis for improvement or recovery.

*Makor v. Burlington N. Santa Fe Ry. Co.*, 680 F. App'x 542, 544 (9th Cir. 2017) (citations, quotation marks, and alteration omitted) (emphasis added).

Here, defendant began the interactive process under the ADA two days after plaintiff took time off work to seek medical treatment. (ECF No. 24 at 4). Plaintiff's request for accommodation form indicated that she would be unable to perform any of her job duties without

a reasonable accommodation and listed only one such accommodation: "time off."[1] (ECF No. 24-2 at 10).

Plaintiff's treating physician, Dr. Kimberly Adams, indicated that plaintiff "suffers from a chronic medical condition" that would likely last "up to 1 y[ea]r?" *Id.* at 14. Dr. Adams further indicated that plaintiff's condition limited her neurological function and vision and her ability to focus, speak, and think. *Id.* at 15. As a result, Dr. Adams indicated that plaintiff would not only be *limited* in "[a]ll job duties" but unable to perform them at all. *Id.* at 15–16.

Despite the estimated one-year duration of plaintiff's condition, Dr. Adams indicated that plaintiff was "not due to return [to work] until 10/27/17" but that she would "reevaluate at that time." *Id.* at 17. Dr. Adams later evaluated plaintiff and determined that the return-to-work date would need to be extended to December 1, 2017. *Id.* at 22.

Defendant attempted to clarify the discrepancy between the estimated duration of plaintiff's condition and her ever-changing return-to-work date. (ECF No. 24-2 at 24). Defendant asked plaintiff "whether the December date [was] just to reevaluate or if there [was] a possibility of extending" and, if it was a reevaluation date, "what would be the estimated return to work date?" *Id.*

Plaintiff responded with an updated request for accommodation form, wherein her treating physician further extended the return-to-work date to January 1, 2018, but noted that date was "subject to change." *Id.* at 29–34. The updated form also indicated that plaintiff "suffers from multiple chronic medical conditions" which would last for an "undetermined" amount of time. *Id.* at 30. Plaintiff required "treatment and evaluation from multiple physicians" to further estimate the condition's duration. *Id.*

---

[1] Plaintiff, in her opposition to the instant motion, indicates that defendant could have had other employees cover her responsibilities or hire a temporary worker. This assertion is unpersuasive because "the ADA does not require an employer to relieve the employee of any essential functions of the job, modify the actual duties, or reassign existing employees or hire new employees to perform those duties." *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 295 (5th Cir. 1998).

1  Plaintiff argues that "[i]f [defendant] had questions or needed clarity on this date or my requirements during this leave, [it] could have reached out to [her] or [her] physician, but [it] did not do so." (ECF No. 28 at 2). But that is precisely what defendant did when it contacted plaintiff regarding the December 1 return date and plaintiff's response was another extension. Plaintiff contends that the "subject to change" addendum to the January 1 return date "was likely to include specific accommodations . . . as opposed to additional time off." *Id.* But that argument is belied by the fact that her return-to-work date had already been changed twice, and the medical records available to defendant all indicated that plaintiff's condition limited her in the performance of *all* her work duties.

When deposed, plaintiff claimed that, at a late-December appointment, her physician officially cleared to return to work in January 2018. (ECF No. 24-5 at 4–8). Plaintiff was unable to produce a record of the late-December appointment at her deposition. *Id.* Plaintiff then went to Dr. Adams on April 1, 2019, who provided a note—generated on and dated April 1, 2019—claiming that plaintiff had been cleared to return to work in January 2018. (ECF No. 24-6 at 6). Notably, if plaintiff was cleared to return to work in January 2018, she did not inform defendant or that fact for over two months. Plaintiff emailed defendant until March 16, 2018, to say that "[she] ha[d] been released to return to work and would like to know the process to regain employment with Southwest Gas." (ECF No. 24-1 at 16).

Thus, plaintiff fails to demonstrate that she was a qualified individual under the ADA because she could not perform the basic functions of her job. Plaintiff's medical documents unambiguously provide that she was restricted from any and all of her major work duties. Plaintiff further fails to demonstrate that her requested accommodation was reasonable because her return-to-work date continued to be extended. The court finds that the ongoing-extensions of a tenuous return-to-work date constituted an indefinite leave, which is not reasonable as a matter of law. The court grants defendant's motion for summary judgment.

. . .

. . .

. . .

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion for summary judgment (ECF No. 24) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant's motion to strike motion for leave to file sur reply (ECF No. 34) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for leave to file a sur reply (ECF No. 33) be, and the same hereby is, STRICKEN.

DATED December 11, 2019.

_____
UNITED STATES DISTRICT JUDGE